### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NJOY, LLC, <br><br> *Plaintiff*, <br><br> v. <br><br> JUUL LABS, INC., <br><br> *Defendant*. | C.A. No. _____ <br><br> **JURY TRIAL DEMANDED** |

### COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff NJOY, LLC ("NJOY" or "Plaintiff") files this Complaint for Patent Infringement and Demand for Jury Trial against Defendant JUUL Labs, Inc. ("JLI" or "Defendant"). Plaintiff alleges as follows:

### NATURE OF THE ACTION

1. Plaintiff brings claims under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*, for infringement of United States Patent Nos. 12,115,303 and 12,194,227 (collectively the "Asserted Patents").

### THE PARTIES

2. Plaintiff NJOY, LLC is a limited liability corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 6601 W. Broad Street, Richmond, Virginia 23230.

3. Defendant JUUL Labs, Inc. is a privately held corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 1000 F Street NW, Suite 800, Washington, D.C. 20004.

4. Upon information and belief, JLI manufactures, sells, offers to sell, uses products and/or causes products to be made, sold, offered for sale and/or used throughout the United States, including in this judicial district. It is also believed that JLI introduces or causes to be introduced, infringing products into the stream of commerce knowing that they would be sold and/or used in this judicial district and elsewhere in the United States.

## JURISDICTION AND VENUE

5. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.

6. The Court has personal jurisdiction over JLI in this action because JLI is a Delaware corporation and because, on information and belief, JLI has regularly and systematically transacted business in this judicial district, directly or through intermediaries, and/or committed acts of infringement in this judicial district.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1400(b) at least because JLI is a Delaware corporation and therefore resides in this District.

## BACKGROUND

8. The NJOY brand was founded in 2006 with the formation of NJOY, Inc., and was a pioneer in vaping and one of the first major electronic cigarettes brands in the United States. In 2017, NJOY, LLC purchased the assets of NJOY, Inc., including the NJOY brand. NJOY continues to serve as an innovator and thought leader in the vaping industry.

9. NJOY's mission is to offer a range of electronic nicotine products for adult consumers in the United States looking for a less harmful alternative to traditional combustible cigarettes. To that end, NJOY has partnered with the National Institute of Drug Abuse ("NIDA") to develop, test and manufacture a Standard Research Electronic Cigarette (SREC) that plays a critical role in clinical and public health research in the United States. SRECs are used as a

consistent, well-characterized investigational product in independent clinical studies funded by NIDA and the National Institutes of Health. SREC is being used or has been used in 16 clinical studies and is planned for use in more studies to expand scientific knowledge regarding the impact of e-cigarettes on public health. NJOY is the only company that has partnered with NIDA to develop a SREC.

10.     In 2018, NJOY launched the NJOY ACE 1.0, its industry-leading, pod-based vapor product and the first product in the ACE product line. The NJOY ACE 1.0 comprised two main components: a disposable pod (the "ACE Pod"), which includes the vaporizable liquid, and an electronic vaporizer device (the "ACE Device"). An adult customer could insert the ACE Pod into the ACE Device for use. When the liquid was depleted, the customer would replace the used ACE Pod with a new one. The ACE Device, on the other hand, was reusable, and could be recharged as necessary. Together, the ACE Pod and ACE Device comprise the ACE System.



11. Since the ACE 1.0's release, NJOY has continually invested in the ACE product line. For example, on May 17, 2024, NJOY filed a Premarket Tobacco Product Application ("PMTA") with the FDA for the ACE 2.0 product, which included a Bluetooth-enabled access restriction technology designed to prevent underage use by authenticating users before unlocking the device. On June 21, 2024, the FDA authorized menthol pods for the ACE product line, marking the first FDA approval for a non-Tobacco vaporizer pod.

## THE ASSERTED PATENTS

12. U.S. Patent No. 12,115,303 (the "'303 patent"), entitled "Electronic Vaporizer," was duly and legally issued by the United States Patent and Trademark Office ("USPTO") on October 15, 2024, and names Gregory D. Conley and Daniel C. Hillenbrandt as inventors. The '303 patent issued from U.S. Patent Application No. 18/229,623, filed on August 2, 2023. The '303 patent is set to expire on July 27, 2030. The '303 patent discloses an electronic vaporizer that includes a cartridge that facilitates provision of a vaporized solution to an individual. A true and correct copy of the '303 patent is attached hereto as **Exhibit A**.

13. Each and every claim of the '303 patent is valid and enforceable.

14. NJOY is the owner by assignment of all right, title, and interest in and to the '303 patent and possesses the exclusive right of recovery for past, present, and future infringement.

15. The '303 patent describes an electronic vaporizer including a cartridge configured to couple to a power source. The cartridge includes, for example, a housing having an interior that holds a solution, first and second apertures at a first end and second end of the housing that are in communication to allow airflow through the housing, an airflow passageway in the housing between the first and second apertures, a resistive heating element located within the housing configured to vaporize the solution responsive to electrical power received from the power source, and a wicking materials configured to direct the solution towards the heating element, permitting

4

the vaporization of the liquid solution for oral consumption. The vaporized solution is provided orally.

16. U.S. Patent No. 12,194,227 (the "'227 patent"), entitled "Electronic Vaporizer," was duly and legally issued by the USPTO on January 14, 2025, and names Gregory D. Conley and Daniel C. Hillenbrandt as inventors. The '227 patent issued from U.S. Patent Application No. 17/986,296, filed on November 14, 2022. The '227 patent is set to expire on July 27, 2030. The '227 patent discloses an electronic vaporizer that includes a cartridge that facilitates provision of a vaporized solution to an individual. A true and correct copy of the '227 patent is attached hereto as **Exhibit B**.

17. Each and every claim of the '227 patent is valid and enforceable.

18. NJOY is the owner by assignment of all right, title, and interest in and to the '227 patent and possesses the exclusive right of recovery for past, present, and future infringement.

19. The '227 patent describes an electronic vaporizer including a cartridge configured to couple to a power source. The cartridge includes, for example, a housing having an interior that holds a solution, first and second apertures at a first end and second end of the housing that are in communication to allow airflow through the housing, an airflow passageway in the housing between the first and second apertures, a resistive heating element located within the housing configured to vaporize the solution responsive to electrical power received from the power source, and a wicking materials configured to direct the solution towards the heating element, permitting the vaporization of the liquid solution for oral consumption. The vaporized solution is provided orally.

20. NJOY and its licensees have complied with the requirements of 35 U.S.C. § 287. NJOY marks its products that practice the Asserted Patents, and any licensee has been required to mark its products with the applicable patent numbers.

21. Upon information and belief, JLI has been aware of NJOY's patent rights and the existence of the Asserted Patents for many years, including since at least August 22, 2023, when NJOY filed a patent infringement complaint against JLI asserting related patents. *See NJOY, LLC v. JUUL Labs, Inc.*, No. 1:23-cv-00917-MN (D. Del.) (Dkt. No. 1).

22. Based on the foregoing, JLI is a willful infringer of the Asserted Patents.

## THE ACCUSED PRODUCTS

23. The products at issue are vaporizer devices, such as electronic nicotine delivery systems ("ENDS"). These products include a disposable pod that contains a housing, a liquid nicotine solution, and components to vaporize the liquid in order to generate an aerosol for inhalation by a consumer and a device into which the pod can be inserted that includes a battery and circuity to power and operate the components in the cartridge.

24. For example, the Accused Products include the JUUL electronic cigarette, which comprises a disposable cartridge with a mouthpiece ("JUULpod"), the cartridge containing a housing, a liquid nicotine solution, and components to vaporize the liquid; a device ("JUUL device") into which a JUULpod can be inserted that includes a battery and circuity to power and operate the components in the JUULpod; and a charger designed for charging the JUUL device. Collectively, these components are the JUUL system.

25. JLI designs, manufactures, markets, and/or sells in the United States and/or imports into the United States vaporizer devices, including the Accused Products, or JLI directs, controls, causes, or encourages such activities.

26. Upon information and belief, JLI designs, manufactures, markets, offers to sell, and/or sells the Accused Products.

27. Upon information and belief, the Accused Products infringe the claims of the '303 and '227 patents.

## COUNT I
## INFRINGEMENT OF U.S. PATENT NO. 12,115,303

28. NJOY realleges and incorporates each of the allegations in Paragraphs 1–27 above, as if fully set forth herein.

29. In violation of 35 U.S.C. § 271, JLI has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '303 patent, including but not limited to claims 1–7 of the '303 patent, literally and/or under the doctrine of equivalents, by, *inter alia*, making, using, offering to sell, selling (directly or through intermediaries), and/or importing in this District and elsewhere in the United States unlicensed products in a manner that infringes the '303 patent. Such unlicensed products include the Accused Products, specifically the JUUL system, including the JUUL device and JUULpod.

30. JLI has and continues to directly infringe, either literally or under the doctrine of equivalents, claims 1–7 of the '303 patent by making, using, offering to sell, selling (directly or through intermediaries), and/or importing in this District and elsewhere in the United States the Accused Products.

31. By way of example only, the Accused Products infringe and continue to infringe at least claim 1 of the '303 patent. Claim 1 of the '303 patent recites:

> A cartridge configured to mechanically and electrically couple to a power source of an electronic vaporizer, the cartridge comprising:
>
> a housing having an interior and a solution holding reservoir configured to hold a liquid solution, the housing having a first end and a second end that is opposite the first end, the

7

> housing having a first aperture at the first end and a second aperture at a center of the second end, the housing configured to releasably mechanically couple to the power source, the first end of the housing including two conductive elements to electrically couple to the power source when the housing is mechanically coupled with the power source, at least e portion of each of the two conductive elements residing in interior of the housing, the first aperture and the second aperture in communication with one another to permit an airflow from the first aperture to the second aperture at least partially through an airflow passageway of the housing, the airflow passageway extending through a center of the housing, and the solution holding reservoir surrounding at least a portion of the airflow passageway;
>
> a resistive heating element located in the interior of the housing, the resistive heating element extending substantially perpendicular to a central longitudinal axis of the housing, the resistive heated element located in an airflow path between the first aperture and the second aperture to permit the airflow to pass directly over the resistive heating element; and
>
> a wicking material configured to draw the liquid solution held by the solution holding reservoir toward the resistive heating element, the resistive heating element coupled with the conductive element and configured to vaporize at least a portion of the liquid solution for oral provision to an individual in the airflow, the resistive heating element responsive to electrical power received from the power source.

32.     An exemplary infringement claim chart for claims 1–7 of the '303 patent is attached hereto as **Exhibit C**.

33.     On information and belief, JLI has actual knowledge of the '303 patent at least through the filing of this Complaint and the companion action in the U.S. International Trade Commission. On information and belief, JLI had actual knowledge of the '303 patent prior to the filing of this Complaint. For example, the '303 patent and '227 patent are listed as a cited reference on at least twenty patents assigned to JLI.

34. On information and belief, JLI is currently actively inducing infringement and has induced infringement of the '303 patent under 35 U.S.C. § 271(b) by knowingly and intentionally inducing others, including its subsidiaries, retailers, distributors, and customers, to directly infringe, literally or under the doctrine of equivalents, the '303 patent. JLI takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising (including by internet websites, print advertisements, etc.), promoting, and instructing others to make, use and/or how to use the Accused Products. On information and belief, JLI has encouraged consumers to use the JUUL device and JUULpod in an infringing manner, including by selling and importing the JUUL device and JUULpods and providing instructions to consumers on how to combine and use the JUUL device with JUULpods.



"How to setup your JUUL Device" and "How to use JUUL," https://www.juul.com/learn/device.

35. On information and belief, JLI also actively promotes the use of JUUL devices with JUULpods through marketing materials, technical specifications, and user manuals. On information and belief, JLI also actively encourages the sale and importation of JUUL devices and JUULpods through its sales and distribution channels. On information and belief, JLI directs and

9

controls the actions of its subsidiaries, retailers, and distributors with respect to the manufacture, offer to sell, and sale of the Accused Products, actively inducing the infringement of those parties. On information and belief, JLI knows or should have known that such activities induce others to directly infringe one or more of the claims of the '303 patent. Thus, JLI has specific intent to induce, or is willfully blind to inducing infringement of the '303 patent. On information and belief, JLI continues to engage in these activities with knowledge of the '303 patent and knowledge that its actions induce others to directly infringe the '303 patent.

36. On information and belief, JLI also contributes to infringement of the '303 patent by others, including its subsidiaries, retailers, distributors, and customers, under 35 U.S.C. § 271(c) by providing or selling the JUUL device and/or the JUULpod. Acts by JLI that contribute to the infringement of others include, but are not limited to, the sale, offer to sell, and/or import by JLI of the components of the Accused Products. On information and belief, JLI directs and controls the actions of its subsidiaries, retailers, and distributors with respect to the manufacture, offer to sell, and sale of components of the Accused Products. The JUUL device and JUULpod constitute a material part of the asserted claims of the '303 patent, are specifically designed and made for use in an infringing manner, and are not staple articles of commerce suitable for any substantial non-infringing use. On information and belief, the JUULpod is designed solely for and specifically adapted for use with the JUUL device, and vice versa. On information and belief, JLI knows such components are especially adapted to infringe by use with other components to assemble the Accused Products. Accordingly, JLI's importation of JUULpods, or components thereof, and JUUL devices constitutes infringement under 35 U.S.C. § 271(c) because such acts by JLI contribute to direct infringement by consumers in the United States. On information and belief,

JLI continues to engage in these activities with knowledge of the '303 patent and knowledge that its acts contribute to infringement.

37. JLI has engaged in egregious infringement behavior with knowledge of the '303 patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, JLI has known or should have known that its actions constituted and continue to constitute infringement of the '303 patent and that the '303 patent is valid at least as of the date JLI was served with or otherwise notified of this Complaint. JLI could not reasonably, subjectively believe that its actions do not constitute infringement of the '303 patent, nor could it reasonably, subjectively believe that the '303 patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, JLI has continued its infringing activities. As such, JLI willfully infringes the '303 patent.

38. By its actions, JLI has injured NJOY and is liable to NJOY for infringement of the '303 patent pursuant to 35 U.S.C. § 271.

39. By its actions, JLI's infringement of the '303 patent has irreparably injured JLI. JLI has suffered, and will continue to suffer, irreparable harm as a result of JLI's infringement of the '303 patent for which there is no adequate remedy at law, unless JLI's infringement is enjoined by this Court. Accordingly, NJOY seeks a permanent injunction enjoining JLI from making, using, selling, offering to sell, and/or importing the Accused Products, and/or otherwise infringing, or inducing or contributing to the infringement of the '303 patent.

40. By its actions, JLI's infringement of the '303 patent has damaged and continues to damage NJOY in an amount yet to be determined.

41. JLI's infringement of the '303 patent is exceptional and entitles NJOY to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

11

## COUNT II
## INFRINGEMENT OF U.S. PATENT NO. 12,194,227

42. NJOY realleges and incorporates each of the allegations in Paragraphs 1–42 above, as if fully set forth herein.

43. In violation of 35 U.S.C. § 271, JLI has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '227 patent, including but not limited to claims 1–6 of the '227 patent, literally and/or under the doctrine of equivalents, by, *inter alia*, making, using, offering to sell, selling (directly or through intermediaries), and/or importing in this District and elsewhere in the United States unlicensed products in a manner that infringes the '227 patent. Such unlicensed products include the Accused Products, specifically the JUUL system, including the JUUL device and JUULpod.

44. JLI has and continues to directly infringe, either literally or under the doctrine of equivalents, claims 1–6 of the '227 patent by making, using, offering to sell, selling (directly or through intermediaries), and/or importing in this District and elsewhere in the United States the Accused Products.

45. By way of example only, the Accused Products infringe and continue to infringe at least claim 1 of the '227 patent. Claim 1 of the '227 patent recites:

> A cartridge configured to mechanically and electrically couple to a power source of an electronic vaporizer, the cartridge comprising;
>
> a housing having an interior and a solution holding reservoir configured to hold a liquid solution, the housing having a first end and a second end that is opposite the first end, the housing having a first aperture at the first end and a second aperture at a center of the second end, the housing configured to releasably mechanically couple to the power source, the housing having two conductive elements at the first end of the housing to electrically couple to the power source when the housing is mechanically coupled with the power source, at least a portion of each of the two conductive elements residing in an interior of the housing, the first

12

>> aperture and the second aperture in communication with one another to permit an airflow from the first aperture to the second aperture at least partially through an airflow passageway of the housing, the airflow passageway extending at least partially through a center of the housing, and the solution holding reservoir surrounding at least a portion of the airflow passageway; and
>
> a resistive heating element located in the interior of the housing, the resistive heating element extending substantially perpendicular to a central longitudinal axis of the housing, the resistive heating element located in an airflow path between the first aperture and the second aperture such that the airflow passes on both transverse sides of the resistive heating element during use of the electronic vaporizer; and
>
> a wicking material configured to draw the liquid solution held by the solution holding reservoir toward the resistive heating element, the resistive heating element electrically coupled with the two conductive elements and configured to vaporize at least a portion of the liquid solution for oral provision to an individual in the airflow, the resistive heating element responsive to electrical power received from the power source.

46. An exemplary infringement claim chart for claims 1–6 of the '227 patent is attached hereto as **Exhibit D**.

47. On information and belief, JLI has actual knowledge of the '227 patent at least through the filing of this Complaint and the companion action in the U.S. International Trade Commission. On information and belief, JLI had actual knowledge of the '227 patent prior to the filing of this Complaint. For example, the '303 patent and '227 patent are listed as a cited reference on at least twenty patents assigned to JLI.

48. On information and belief, JLI is currently actively inducing infringement and has induced infringement of the '227 patent under 35 U.S.C. § 271(b) by knowingly and intentionally inducing others, including its subsidiaries, retailers, distributors, and customers, to directly infringe, literally or under the doctrine of equivalents, the '227 patent. JLI takes such active steps

knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising (including by internet websites, print advertisements, etc.), promoting, and instructing others to make, use and/or how to use the Accused Products. On information and belief, JLI has encouraged consumers to use the JUUL device and JUULpod in an infringing manner, including by selling and importing the JUUL device and JUULpods and providing instructions to consumers on how to combine and use the JUUL device with JUULpods.



"How to setup your JUUL Device" and "How to use JUUL," https://www.juul.com/learn/device.

49.     On information and belief, JLI also actively promotes the use of JUUL devices with JUULpods through marketing materials, technical specifications, and user manuals. On information and belief, JLI also actively encourages the sale and importation of JUUL devices and JUULpods through its sales and distribution channels. On information and belief, JLI directs and controls the actions of its subsidiaries, retailers, and distributors with respect to the manufacture, offer to sell, and sale of the Accused Products, actively inducing the infringement of those parties. On information and belief, JLI knows or should have known that such activities induce others to directly infringe one or more of the claims of the '227 patent. Thus, JLI has specific intent to

14

induce, or is willfully blind to inducing infringement of the '227 patent. On information and belief, JLI continues to engage in these activities with knowledge of the '227 patent and knowledge that its actions induce others to directly infringe the '227 patent.

50. On information and belief, JLI also contributes to infringement of the '227 patent by others, including its subsidiaries, retailers, distributors, and customers, under 35 U.S.C. § 271(c) by providing or selling the JUUL device and/or the JUULpod. Acts by JLI that contribute to the infringement of others include, but are not limited to, the sale, offer to sell, and/or import by JLI of the components of the Accused Products. On information and belief, JLI directs and controls the actions of its subsidiaries, retailers, and distributors with respect to the manufacture, offer to sell, and sale of components of the Accused Products. The JUUL device and JUULpod constitute a material part of the asserted claims of the '227 patent, are specifically designed and made for use in an infringing manner, and are not staple articles of commerce suitable for any substantial non-infringing use. On information and belief, the JUULpod is designed solely for and specifically adapted for use with the JUUL device, and vice versa. On information and belief, JLI knows such components are especially adapted to infringe by use with other components to assemble the Accused Products. Accordingly, JLI's importation of JUULpods, or components thereof, and JUUL devices constitutes infringement under 35 U.S.C. § 271(c) because such acts by JLI contribute to direct infringement by consumers in the United States. On information and belief, JLI continues to engage in these activities with knowledge of the '227 patent and knowledge that its acts contribute to infringement.

51. JLI has engaged in egregious infringement behavior with knowledge of the '227 patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, JLI has known or should have known that its actions constituted and continue to constitute

15

infringement of the '227 patent and that the '227 patent is valid at least as of the date JLI was served with or otherwise notified of this Complaint. JLI could not reasonably, subjectively believe that its actions do not constitute infringement of the '227 patent, nor could it reasonably, subjectively believe that the '227 patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, JLI has continued its infringing activities. As such, JLI willfully infringes the '227 patent.

52. By its actions, JLI has injured NJOY and is liable to NJOY for infringement of the '227 patent pursuant to 35 U.S.C. § 271.

53. By its actions, JLI's infringement of the '227 patent has irreparably injured JLI. JLI has suffered, and will continue to suffer, irreparable harm as a result of JLI's infringement of the '227 patent for which there is no adequate remedy at law, unless JLI's infringement is enjoined by this Court. Accordingly, NJOY seeks a permanent injunction enjoining JLI from making, using, selling, offering to sell, and/or importing the Accused Products, and/or otherwise infringing, or inducing or contributing to the infringement of the '227 patent.

54. By its actions, JLI's infringement of the '227 patent has damaged and continues to damage NJOY in an amount yet to be determined.

55. JLI's infringement of the '227 patent is exceptional and entitles NJOY to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, NJOY demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, NJOY respectfully requests that this Court enter judgment against JLI as follows:

A. That this Court adjudge and decree that JLI has infringed and continues to infringe, '303 patent;

B. That this Court adjudge and decree that JLI has infringed and continues to infringe, '227 patent;

C. That this Court adjudge and decree that JLI's infringement of the '303 patent has been willful;

D. That this Court adjudge and decree that JLI's infringement of the '227 patent has been willful;

E. That this Court adjudge and decree that the '303 patent is enforceable, eligible for patent protection, and not invalid;

F. That this Court adjudge and decree that the '227 patent is enforceable, eligible for patent protection, and not invalid;

G. That this Court grant preliminary and permanent injunctive relief enjoining the aforesaid acts of infringement by JLI, their officers, agents, servants, employees, subsidiaries, affiliates, divisions, branches, predecessors, successors in business and attorneys, and those acting in concert with JLI, including related individuals and entities, customers, representatives, original equipment manufacturers, dealers, and distributors;

H. That if a permanent injunction is not awarded, this Court enter an award for NJOY of ongoing royalty for JLI's post-verdict infringement, payable on each product offered and/or imported by JLI that is found to infringe one or more of the Asserted Patents, and on all future products that are not colorably different from those found to infringe;

I. That this Court enter an award for NJOY of such damages as it shall prove at trial against JLI that are adequate to compensate NJOY for the patent infringement that has occurred, said damages to be no less than a reasonable royalty together with prejudgment interests and costs, post-judgment interests and costs, and an accounting;

J. That this Court enter an award for NJOY of up to three times the amount of compensatory damages because of JLI's willful infringement, and any other enhanced damages provided by 35 U.S.C. § 284;

K. That this Court render a finding that this case is "exceptional" and award to NJOY its costs and reasonable attorneys' fees, as provided by 35 U.S.C. § 285; and

L. That this Court grant NJOY such other relief, including other monetary and equitable relief, as may be just and proper.

Dated: September 19, 2025				Respectfully submitted,

						**FISH & RICHARDSON P.C.**

						*/s/ Susan E. Morrison*
						Susan E. Morrison (#4690)
						222 Delaware Avenue, 17th Floor
						Wilmington, DE  19801
						(302) 652-5070
						morrison@fr.com

						Benjamin C. Elacqua (*pro hac vice forthcoming*)
						Joshua Park (*pro hac vice forthcoming*)
						Mariam Khan (*pro hac vice forthcoming*)
						FISH & RICHARDSON P.C.
						909 Fannin Street, Suite 2100
						Houston, Texas 77010
						(713) 654-5300
						elacqua@fr.com
						jpark@fr.com
						mkhan@fr.com

						Michael J. McKeon (*pro hac vice forthcoming*)
						Richard A. Sterba (*pro hac vice forthcoming*)
						FISH & RICHARDSON P.C.
						1000 Maine Ave., SW
						Suite 1000
						Washington, D.C. 20024
						(202) 783-5070
						mckeon@fr.com
						sterba@fr.com

						Aamir Kazi (*pro hac vice forthcoming*)
						Jacqueline Tio (*pro hac vice forthcoming*)
						FISH & RICHARDSON P.C.
						1180 Peachtree Street., NE
						21st Floor
						Atlanta, Georgia 30309
						kazi@fr.com
						tio@fr.com
						(404) 892-5005

Scott M. Flanz (*pro hac vice forthcoming*)
Alison Elkman (*pro hac vice forthcoming*)
FISH & RICHARDSON P.C.
7 Times Square, 20th Floor
New York, New York 10036
(212) 765-5070
flanz@fr.com
elkman@fr.com

Elizabeth Ranks (*pro hac vice forthcoming*)
FISH & RICHARDSON P.C.
1 Marina Park Drive, Suite 1700
Boston, Massachusetts 02210
(617) 542-5070
ranks@fr.com

*Counsel for Plaintiff NJOY, LLC*